No. 1058.

### B. J. Sage, Agent, vs. William S. Evins.

When the verdict of the jury decides issues not involved in the pleadings, it will be set aside, and the case remanded to be tried de novo.

APPEAL from the Thirteenth Judicial District Court, parish of St. Landry. *Hudspeth*, J.

Lewis & Bro. for Plaintiff and Appellant.

John E. King for Defendant and Appellee.

The opinion of the Court was delivered by

Levy, J. The plaintiff instituted suit against the defendant, in which he alleged: that about the 1st of December, 1876, he entered into a planting partnership with the defendant, for the cultivation of a portion of the Australia plantation, in the parish of St. Landry, for the year 1877, the conditions and stipulations of which partnership are set forth in the petition, and are shown in the written document, in evidence, signed by the parties, and known as the first contract of partnership. Under its terms the defendant, Evins, became the managing partner; the net proceeds of all crops and products of the place to be divided equally; each partner furnished 400 bushels of corn; there remaining about 2200 bushels of corn on the place belonging to the plaintiff, Sage, the defendant, Evins, agreed to furnish the capital necessary to buy, feed and sell stock, cattle and hogs, to be fed on said corn as long as it should be profitable to both parties to do so, or until the remainder of the corn should be used up; the capital, labor, etc., thus to be furnished by Evins being computed as equal in value to the corn furnished by Sage. Half of certain seed cane and stubble on the place was sold by Sage to Evins, to be used in making a sugar crop in said year. On March 1st, 1877, a modification of the original contract of partnership was made, whereby it was agreed that, inasmuch as the buying and feeding stock and hauling wood could not be complied with by Evins, he (Evins) agreed to sell, to the best advantage of Sage, the corn and wood belonging to Sage, to make all improvements necessary for the convenience and use of the plantation, with the hands working for wages, without extra charge. The profits and loss of plantation to be

shared equally, after deducting all expenses, except those of material for improvements, which were to be charged to Sage, personally; also sugar mill and pan, if they should be purchased. Evins agreed to furnish the capital to buy the mill and pan, provided other arrangements could not be made for taking off the crop of cane at a profit to the plantation. Other minor details as to purchase, care and disposition of farming utensils, etc., bought during the year, are also embodied in this agreement of March 1st.

The plaintiff alleges that the inducement and main consideration which led him to enter into the partnership with Evins, in November, 1876, were the promises and undertaking of Evins to furnish the capital to buy cattle and hogs, to be fattened on the corn on hand, which stock, when fattened, were to be sold for the benefit in equal shares of the partnership; and that on the failure of Evins to comply with his undertaking in this regard, he, "fearing litigation and the loss of crop (it being too late for new arrangements with others), was morally coerced to accept new promises of Evins, in lieu of those violated or not fulfilled," and therefore entered into this new or modified partnership of March 1st. He also alleges violation or failure of compliance by Evins of these new promises or stipulations, and that, "because of failure of consideration on the part of Evins, these contracts are null and of no effect, and the Court is prayed so to adjudge." Plaintiff further alleges that in about the latter part of June, 1877, the previous contract and modified contract of partnership were cancelled, Evins agreeing to take a stated salary as overseer, and give up his interest as partner. The plaintiff avers that he assented to this arrangement, in order "to get on a just and commutative basis, and avoid litigation."

That afterward, about the 22d of July, Evins wrote to plaintiff, asking him to let him off from the last agreement (that of overseership), to which plaintiff replied that he was "more than willing to reinstate the former contracts," but that "the formal reinstatement, as contemplated, of the said contract, was never afterward asked for by Evins, and was never made." That though the contracts of partnership were not reinstated, defendant continued to act as if they still subsisted, and plaintiff believes that defendant bases his claim as partner thereon. Plaintiff further alleges that defendant has violated the contract as to overseership; that the representations of the defendant as to his means, and competency, and ability, to get labor, etc., and to do all that a prudent administrator could do, induced plaintiff to enter into his contracts with defendant, and to give him entire administration, possession and control of the plantation.

Plaintiff alleges "carelessness, neglect and fault" on the part of defendant, which render the protection of the Court necessary. He further

alleges that during his overseership defendant, in about the last of November, or 1st of December, in violation of plaintiff's wishes and defendant's promises, shipped several bales of cotton to a merchant other than the one agreed on, without informing or explaining same to plaintiff; that he had hindered the gathering of the crop, and done various other wrongful and improper acts to the injury of plaintiff; that, by reason of these acts complained of, and of the incompetency, mismanagement, carelessness, waste, neglect and fault of defendant, plaintiff was damaged to the extent of $1500, and alleging other and further damage not then ascertainable, he reserves the right to file an amended petition setting forth the same more particularly. Plaintiff sets forth sixteen distinct items whereby damages have been sustained by him, growing out of the misconduct, etc., of defendant. He prayed for and obtained a sequestration of all the property, including the books, etc., belonging to the *alleged* partnership, and an injunction prohibiting defendant from interfering with the plantation, "and from attempting to get possession of the effects and books of the partnership by tendering either a forthcoming or indemnity bond, or both, of the same;" for a decree annulling "all contracts heretofore existing between petitioner and defendant for want and failure of consideration;" and "in case the Court should be of opinion that a co-partnership exists, the same be dissolved, and a liquidation of its affairs be ordered, and a receiver be appointed to take possession of the assets of the partnership, and settle the same." Plaintiff also filed an amended petition, in which he claims the sum of $250, the value of five or six hundred barrels of corn, which he alleges that the defendant, during the time he was in charge of said plantation, appropriated to his own use, and failed to account for, and which he charges the defendant in each appropriation with "being actuated by the purpose of defrauding him, plaintiff.

Under the writ of sequestration the property referred to in plaintiff's petition was seized, and the writ of injunction was duly served.

The defendant in his answer denied plaintiff's allegations, except as specially admitted therein.

He avers that he managed the Australia plantation during the year 1877, first as partner of plaintiff, and afterwards as plaintiff's overseer, manager, or agent; as partner from January until March, under the first contract, and from March until July, under the modified contract; that in July the partnership contracts were dissolved and a new contract was entered into by which defendant was to receive $600 for his services during the year, which contract of July contained divers stipulations as to reimbursement to defendant of advances made by the defendant, and assumption by plaintiff of the contracts with hired hands, and to give defendant additional compensation according to the

crop made. Defendant avers that he managed the plantation according to contract, and, with the means at his disposal, to the best interest of plaintiff. He claims that according to the contract of July he was to be reimbursed by plaintiff for advances made and expenses previously incurred by him ; and that plaintiff should be decreed to pay him the following amounts, viz : $124 for defendant's share of seed cane paid for by defendant, which reverted to plaintiff ; $200, paid for corn, which went to the use of plaintiff's plantation ; $70, for money advanced for construction of levee ; $1000 advanced to hands ; $700 for wages and commissions on crop ; $250 advanced for plantation supplies ; $125 balance due on plaintiff's promissory note to defendant ; $1000 as special damages due him by plaintiff, for the wrongful and illegal issuance of the writs of sequestration and injunction, $500 as to each writ ; all which sums he claims in reconvention. Defendant prays that plaintiff's demand be rejected, and for dissolution of the injunction with the maximum of damages, besides the special damages of $500, and that the sequestration be set aside with damages as set forth, and for judgment in his favor against plaintiff for the sums claimed by him in reconvention and for trial by jury.

The case was accordingly tried by jury and occupied about a week. The record is a large one, and contains the testimony of many witnesses, copies of the various contracts which had been entered into by the parties, and quite a voluminous correspondence between plaintiff and defendant, running through the year 1877, in which the shifting engagements, varied emotions and respective grievances of the parties are vividly portrayed as they severally arise or spring into being.

The jury in their verdict found that " W. S. Evins was and has been a partner of Bernard J. Sage during the whole year of 1877, until the seizure was made, and we therefore order that a liquidation be made. In relation to sequestration and injunction, we have come to agreement that Bernard J. Sage did not have sufficient cause to issue a writ of injunction and sequestration on the crop and other articles on the Australia Plantation of the year 1877. In relation to damages, we have agreed that Bernard J. Sage, plaintiff, pay to W. S. Evins, defendant, the sum of two hundred and fifty dollars damage."

The record discloses that both the plaintiff and defendant regarded the agreement entered into on the 3d of July, 1877, as a cancellation of the pre-existing contracts and as changing their relations as partners into those of employer and overseer.

In plaintiff's petition he alleges : " That the new arrangement (that of July 3d) went into effect ; that on the 22d of July the said Evins wrote to petitioner that he had settled with Garland, and asked petitioner to let him off from the last agreement, to which petitioner

responded that he was more than willing to reinstate the former contract, and that the formal reinstatement, as contemplated, of said contracts *never was afterwards asked for by the said Evins and never was made.* Defendant, in his answer, alleges, "that in the month of July the previous contracts of partnership were dissolved and a new contract was made, by which defendant was to receive $600 for his services during the year," etc. In this new contract of July 3d, it is agreed that Evins will accept the proposal of Sage and receive "as wages $600 a year," the advances made by Evins to be repaid to him, and Sage to assume all that Evins had promised to the hired or share hands, "all previous contracts to be null." Thus it will be seen that, in the pleadings, both parties allege and admit the cancellation of the partnership and claim the existence of the contract of overseership. The prayer of the plaintiff, in the alternative, in the event of the recognition of a continued or reinstated partnership by the Court, seems also to be based on his belief that the defendant would contend for the existence of the partnership, and that he, defendant, would base his claims as partner upon the subsistence of the original contracts. The issue in this case could not, therefore, *under the pleadings,* involve the question of partnership. Both parties expressly aver that the partnership had been dissolved, and that the defendant held the position of overseer or agent of the plaintiff. Yet the jury assumes, in the face of these pleadings and judicial admissions, to ignore the will and intentions of the parties and to force upon them a contract which they both had solemnly repudiated. This partnership could only exist by consent of parties, and, as to themselves, when entered into could be dissolved by mutual consent, and surely could not be reinstated or renewed after such dissolution without their joint consent. The jury is selected and sworn to try the issue joined by the parties ; to the decision of that issue they are solely confined ; and the *issue* is the proposition or propositions affirmatively stated by the one and negatived by the other party. Confined to the decision of the question thus raised, it is not competent for the jury to go beyond the pleadings to ignore the matter which they are sworn to inquire into, and to frame and pass upon an issue of their own creation inconsistent with the joinder of pleading.

The verdict in this case was clearly not responsive, and, forming the basis of the judgment, must be set aside. The unwarranted theory which the jury adopted evidently controlled their deliberations and caused them to reach a verdict which disregarded the consideration of the respective demands of plaintiff and defendant. It is to be presumed that the jury acted upon the principle of law that, as between partners, a suit will not lie for the recovery of a specific asset, but in order to ascertain their rights, there must be a full and complete settle-

ment of their partnership accounts, and deciding that in this case the relations of partners existed between plaintiff and defendant, they failed to consider and pass upon the pecuniary demands at issue.

We take occasion also to remark that under the settled jurisprudence of our State and the uniform decisions, of this Court on the subject, the claim of damages growing out of the issuance of the injunction and sequestration under the demand in reconvention, cannot be allowed in this suit. An action, therefore, might be had in a separate suit on the bonds. Morgan vs. Driggs et al., 17 La. 176; Sheen vs. Stothart, 29 An. 640; 30 An. 742.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury be set aside and the judgment of the lower court be annulled, avoided and reversed, and that this case be remanded to the Thirteenth District Court for the parish of St. Landry, to be tried *de novo* and in accordance with the pleadings, and that the appellee do pay the costs of this appeal.